IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS R. HOOD, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-CV-955-MAB |
| | ) |
| BRAD SHANER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment filed by Defendant Brad Shaner (Doc. 60). For the reasons outlined below, the motion is granted.

## BACKGROUND

Plaintiff Curtis Hood, Sr. is an inmate in the Illinois Department of Corrections, currently incarcerated at Western Correctional Center. He filed this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 on September 7, 2017, alleging violations of his constitutional rights when he was incarcerated at Lawrence Correctional Center. Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth Amendment claim against Defendants John Bach, Shawn Ochs, and Brad Shaner for failing to protect him from an attack by his cellmate in April 2017 (Doc. 6). Defendants Bach and Ochs were dismissed on March 18, 2019 after their Motion for Summary Judgment for Failure to Exhaust was granted (Doc. 52). This matter proceeded to discovery on the merits of Plaintiff's claim only as to Defendant Shaner. Defendant

Shaner filed a motion for summary judgment on August 30, 2019 (Doc. 60). Plaintiff filed a response on October 3, 2019 (Doc. 68). Defendant Shaner did not file a reply.

## FACTS

Plaintiff was housed at Lawrence Correctional Center from 2016 to March 2019 (Doc. 61-1, p. 7). Defendant Shaner was a correctional officer at Lawrence Correctional Center, who worked during the 7:00 a.m. to 3:00 p.m. shift (*Id.* at p. 17).

As of April 2017, Plaintiff lived in 7B cell number 15 with a cellmate (Doc. 61-1, pp. 15, 16). According to Plaintiff he and his cellmate were not getting along because his cellmate "wasn't a clean person. He didn't want to clean up. He didn't want to get showers." (*Id.* at p. 16). On April 9th at approximately 9:00 a.m., Plaintiff approached Officer Shaner in the dayroom and told Shaner that he and his cellmate were not getting along and "things was possibly about to get violent" (*Id.* at pp. 16–17, 18). Plaintiff asked Shaner if he or his cellmate could get moved to a different cell (*Id.* at p. 17). Officer Shaner told Plaintiff he would call placement to see if he could get one of them moved (*Id.* at p. 18). Shaner came back and told Plaintiff that no one answered the phone, but he would keep trying (*Id.* at pp. 19, 21).

When the shift changed at 3 p.m., Shaner had not accomplished getting Plaintiff or his cellmate moved (Doc. 61-1, p. 22). The following day, Plaintiff told two other officers that he and his cellmate were not getting along, and things might turn violent, but they took no action (*Id.* at pp. 21–22, 25–26, 28). Plaintiff wrote a grievance about getting moved out of his cell and put it in the grievance box on the afternoon of April 10th on his way to the insulin line (*Id.* at pp. 21, 22, 23, 25). When he returned to his cell

from the insulin line, his cellmate attacked him and hit him in the head with a hot pot (*Id.* at pp. 26, 32). Plaintiff testified that he was taken to the hospital and received six staples in his head (*Id.* at p. 36).

Both Plaintiff and his cellmate were ticketed for fighting (Docs. 61-2, 61-3). Plaintiff was found guilty and given three months in segregation, a demotion to C grade for three months, and lost one month of good time credit (Docs. 61-2, 61-3).

Plaintiff testified that prior to the April 10th altercation, his cellmate was having mood swings and "getting angry—angry and angry by the day" (Doc. 61-1, pp. 45, 48). Plaintiff asked his cellmate if he was on any type of "psych meds," and his cellmate said he was supposed to be, but he did not take them (*Id.* at pp. 23, 45). Plaintiff further testified that he and his cellmate had had a previous physical altercation a few days prior (*Id.* at p. 23–24, 46).

However, Plaintiff admitted that he did not tell Defendant Shaner or the other officers about the prior altercation with his cellmate because he was concerned he would be sent to segregation (Doc. 61-1, pp. 23–24, 27, 45–46). In fact, Plaintiff had never talked to Defendant Shaner about tension between him and his cellmate prior to April 9th (Doc. 61-1, p. 18). Plaintiff did not tell Officer Shaner why he and his cellmate were not getting along as of April 9th or why he thought things might turn violent with his cellmate (*Id.* at p. 18). Plaintiff admitted that his cellmate had never threatened him (*Id.* at p. 45). And there is no indication that Plaintiff told Officer Shaner about his concerns that his cellmate was having mood swings and might not be taking his "psych meds" (*see id.*).

Plaintiff knew how to request protective custody however he did not feel he

should request protective custody because he thought he could just talk to an officer and get him or his cellmate moved (Doc. 61-1, pp. 19, 20).

## DISCUSSION

Summary judgment is proper when the moving party "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Instead, "it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836.

The Eighth Amendment's prohibition on "cruel and unusual punishments" imposes a duty on prison officers to "take reasonable measures to guarantee the safety of . . . inmates." *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). In particular, prison officials are required "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833.

In order to succeed on an Eighth Amendment claim based on a failure to protect, a prisoner must show that the prison official was deliberately indifferent to "an excessive risk" to their health or safety. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). Like all deliberate indifference claims, there is both an objective and subjective component. *Id.* First, the prisoner must show that the harm to which they were exposed was objectively serious. *Id.* Second, the prisoner must show that the prison official had "actual, and not merely constructive, knowledge" of the risk, "yet failed to take appropriate steps to protect him from the specific danger." *Id.*; *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008). In deciding whether the prison official was aware of the substantial risk, "the circumstances as a whole must be considered." *LaBrec v. Walker*, 948 F.3d 836, 843 (7th Cir. 2020).

"Complaints that convey only a generalized, vague . . . concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Gevas*, 798 F.3d at 480–81. *See, e.g., Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008) ("[The prisoner's] vague statement that inmates were 'pressuring' him and 'asking questions' were simply inadequate to alert the officers to the fact that there was a true threat at play."); *Klebanowski,* 540 F.3d at 639–40 (officers had no notice of specific threat where they knew the plaintiff had been involved in an altercation with three other inmates and he told them that he was afraid for his life and wanted to be transferred off the tier, but he did not tell them he was threatened with future violence or that the initial attack was gang-related); *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (officers had no notice of specific risk of serious harm where prisoner only told them he

was "having problems in the block" and "needed to be removed" but did not say he was afraid of being assaulted and did not disclose who had threatened him or what the threats were).

On the other hand, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas*, 798 F.3d at 481 (officers had notice that plaintiff was in danger of being attacked where plaintiff told them about an individual who repeatedly threatened to stab him had remarked that he had snitched on a prior cellmate); *Haley v. Gross,* 86 F.3d 630, 643 (7th Cir. 1996) (prisoner advised sergeant, *inter alia,* that cellmate was intimidating him, acting strangely, had threatened that "something crucial was going to happen" if one of them was not moved, and was now "deadlocked" in cell, which restricted ingress to and egress from cell).

Here, viewing the facts in the light most favorable to Plaintiff, the undersigned finds that Plaintiff failed to raise a triable issue of fact as to whether Officer Shaner had subjective knowledge that he faced a substantial risk of harm. Plaintiff only told Officer Shaner that he and his cellmate were not getting along and "things was possibly about to get violent," and he asked if one of them could be moved. But Plaintiff did not provide any explanation regarding the nature of the purported threat. In fact, it is not even clear from Plaintiff's statements that he was the one in danger of harm. Plaintiff simply said things might turn violent, which could mean that he intended to perpetrate violence against his cellmate, or it could mean that he thought he was going to be the victim of

violence from his cellmate. Plaintiff also did not provide any context for the purported threat to his safety. He did not, for example, tell Shaner what the source of discord was between him and his cellmate. He did not tell Shaner the reasons he was concerned about his safety or that his cellmate was acting unstable. Plaintiff also admitted that he had never spoken to Officer Shaner about tension with his cellmate prior to April 9th nor did he relay any information to Officer Shaner about the prior altercation with his cellmate. There is no evidence from which it could be inferred that Officer Shaner had any independent knowledge of the tension and prior altercation between Plaintiff and his cellmate. There is also no indication that Shaner had any independent knowledge as to whether Plaintiff's cellmate had a history or propensity for violence. That means that the only information Officer Shaner had about the purported threat to Plaintiff's safety was based on Plaintiff's statements to him. Those statements were simply too vague and generalized to give Shaner notice of a specific threat. Without some type of additional information, no reasonable jury could conclude that Shaner had any reason to suspect that Plaintiff actually faced an imminent and significant threat to his safety.

Accordingly, Officer Shaner is entitled to summary judgment.

## CONCLUSION

The motion for summary judgment filed by Defendant Brad Shaner (Doc. 60) is **GRANTED.** Plaintiff's Eighth Amendment claim against Shaner is **DISMISSED with prejudice** and judgment will be entered in Shaner's favor. There being no claims or Defendants remaining in this action, the Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: October 6, 2020**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**
